**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEMIAN C. DESCHEPPER, et al.,** ) | | |
| **individually and on behalf of all others** ) | | |
| **similarly situated,** ) | | |
|       **Plaintiffs,** ) | | **Judge Joan B. Gottschall** |
| ) | | |
|       **v.** ) | | **No. 13 CV 8379** |
| ) | | |
| **MIDWEST WINE AND SPIRITS, INC.;** ) | | |
| **HAUS WINE AND SPIRITS, INC.; HAUS** ) | | |
| **WINE & SPIRITS, INC.; DIRECT MAIL** ) | | |
| **RESOURCES, INC.; KIG PROPERTIES,** ) | | |
| **LLC; DAVID GARGANO; ZAIRA** ) | | |
| **KARINA GARGANO; MATTHEW** ) | | |
| **HELMS; and MICHAEL LAIRD,** ) | | |
|       **Defendants.[1]** ) | | |

## MEMORANDUM OPINION AND ORDER

The plaintiffs are current or former employees of Midwest Wine and Spirits, Inc.

("MWW"), a liquor wholesaler. The defendants in this putative class action lawsuit are MWW,

Haus Wine and Spirits, Inc. (MWW's alleged successor), two entities that are allegedly

intertwined with MWW and Haus (Direct Mail Resources, Inc. and KIG Properties, LLC) and

individuals associated with all of these entities (Matthew Helms, the former general manager of

MWW and a partial owner of Haus, Michael Laird, the former Controller of MWW and a partial

owner of Haus, David Gargano, the President and CEO of MWW, the owner and CEO of Direct

Mail, and the President, CEO, and owner of KIG Properties, and Zaira Karina Gargano, David

---

[1] The plaintiffs sued the non-corporate defendants (Mr. and Mrs. Gargano, Matthew Helms, and Michael Laird) in their "individual and professional capacities." The plaintiffs do not define what a "professional capacity" suit is. This is not a § 1983 action where defendants can be sued based on actions taken in their official and individual capacities. As the non-corporate defendants can only be sued individually, the "professional capacity" claims against them are dismissed.

Gargano's wife and a partial owner of Haus).[2] MWW, Mr. and Mrs. Gargano, Direct Mail, and

KIG's motion to dismiss the second amended complaint in its entirety pursuant to Fed. R. Civ. P.

12(b)(6) is before the court. For the reasons discussed below, the motion is granted in part and

denied in part.

## I. FACTS[3]

This case involves two entities engaged in the business of selling alcoholic beverages, a

property management company (KIG), and a direct mail company (Direct Mail). The parties

dispute whether the entities are related. For purposes of clarity, the court will summarize the

plaintiffs' allegations about each entity separately.

## A. Midwest Wine and Spirits, Inc.

MWW is a wholesaler primarily engaged in the distribution and marketing of wine,

distilled alcoholic beverages, neutral spirits, and ethyl alcohol. The plaintiffs are current or

former employees of MWW, which is owned and operated by Mr. Gargano. The plaintiffs did

not sell alcoholic beverages directly to consumers. Instead, they promoted MWW's branded

---

[2] The plaintiffs, Haus, and Mr. Helms filed a stipulation reflecting their agreement to stay the action as to Haus and Mr. Helms pending a ruling on the motion to dismiss that was filed by the other defendants. The stipulation should have been filed as a motion as it requests relief that must be granted by the court. The court would not have granted the motion, as the pending motion to dismiss is directed at counts that include Haus and Mr. Helms. It is inefficient to consider multiple motions to dismiss the same claims seriatim. At this point, however, this is water under the bridge. Haus and Mr. Helms did not file a separate motion to dismiss or explicitly join the pending motion to dismiss, and the court is dismissing the current complaint with leave to replead in part. Haus and Mr. Helms have thus waived their ability to challenge the current complaint.

[3] The following facts are drawn from the plaintiffs' second amended complaint and are accepted as true for the purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). In light of the plaintiffs' sweeping allegations of wrongdoing, the court stresses that the fact section is solely based on the plaintiffs' allegations. This opinion does not contain any findings of fact.

product to retailers, who then resold the product to end users.  The plaintiffs' other duties included making cold calls to prospective new merchants, visiting existing merchants to take merchandise orders, conducting surveys, pitching brands sponsored by their product suppliers, providing samples to new and existing merchants, and driving as necessary to perform their assigned tasks.

According to the plaintiffs, MWW and Mr. Gargano "micromanaged" the plaintiffs by, among other things, requiring them to call the office several times each day to provide status reports and submit "pre-plans" and "post-plans" detailing their daily work for each sales account.  MWW controlled the brands that each worker could promote, set the workers' hours, required the workers to obtain approval for time off, and threatened them with termination "if they did not perform as demanded."  (2d Am. Compl. ¶ 44, Dkt. 28.)  MWW's workforce gave potential customers MWW-branded business cards that were customized with their individual names.  MWW required the workers to wear MWW-branded clothing in the field, complete periodic wine and spirits courses and reading assignments, take tests, and attend weekly meetings.

The workers personally paid, in full or in part, for expenses such as gas, car repairs, parking, tolls, necessary equipment, cell phone service, and clothing bearing MWW's logo. Although MWW created an expense reimbursement system in 2013, it reimbursed the workers for only a portion of their expenses.  When merchants placed an order, some sales associates would call the sale into MWW's office, where office staff would input it into MWW's system. Other sales associates were required to use MWW's computer to input orders themselves.

The plaintiffs were compensated through a hybrid salary and commission structure. When this case was filed, the starting salary for sales associates was $30,000 per year, with a 40-

hour workweek and an opportunity to earn commissions. Under an earlier salary structure, sales associates received $33,000 per year, with a 40-hour workweek plus commissions. The reduction in salary reflected a "purported opportunity for greater commissions." (*Id*. ¶ 56.)

MWW classified the plaintiffs as independent contractors but referred to them internally as "employees." MWW's "New Hire Packet" instructed new hires that they needed to fill out 1099 and W-9 forms before they could receive business cards or get paid. Several sales associates did not realize they were classified as independent contractors until several months after they started working at MWW. Despite the classification of most of the work force as independent contractors, Mr. Gargano allowed a district manager and three sales associates to transition to W-2 employee status without any adjustments to the terms or conditions of their employment. With respect to two of these four individuals, Mr. Gargano characterized the change in classification as an "award" or "promotion" for successful sales. (*Id*. ¶ 50.)

MWW and Mr. Gargano classified MWW's workforce as FLSA exempt. From the workers' start dates to the present, MWW did not pay its active workers overtime for hours worked in excess of 40 hours per week and did not pay its terminated workers their earned straight time, commissions, and final wages. Some of MWW's workers complained to their managers and Mr. Gargano about MWW's practice of classifying them as independent contractors rather than employees. Additionally, MWW's retained lawyer advised Mr. Gargano to transition his "independent contractor" workforce to W-2 employees, but Mr. Gargano did not follow this advice. Finally, the Illinois Liquor Control Commission told Mr. Gargano that his sales associates were improperly classified. The order of these events is unclear on the face of the second amended complaint.

**B.  Haus Wine and Spirits, Inc.**

In August 2013, the plaintiffs' counsel sent Mr. Gargano a demand letter that asserted, among other things, FLSA violations.  The following month, Mr. Gargano convened a meeting to advise MWW's staff that MWW would be closing.  During this meeting, Mr. Helms announced that he was leaving MWW to start Haus, a new alcohol distributor.[4]  Mr. Helms stated that the MWW workers might be able to work at Haus after MWW ended its operations.

MWW's management told the workers that Mr. Gargano's involvement with Haus was limited to leasing MWW's office space and delivery equipment to Haus.  Mr. Gargano, however, began to transfer MWW's corporate assets to Haus.  Haus currently operates out of MWW's offices, employs former MWW workers, and uses MWW cargo vans to make deliveries.  Haus's staff includes MWW staff members who were paid as W-2 employees while at MWW. These staff members include Lori Burck, who describes Haus as "formerly operating under the name of [MWW]."  (*Id.* ¶ 121.)

As of the date that the second amended complaint was filed, Haus was hiring employees.  When an individual calls Haus to inquire about a position, a representative of MWW answers the phone and states that Haus is a tenant of MWW.  Haus does not pay rent to MWW for use of its facility and delivery systems.  The plaintiffs further allege that MWW sold its assets to Haus at "fire sale prices" of less than 70% of their usual wholesale value.  (*Id.* ¶ 126.)

---

[4]  According to the plaintiffs, Mr. Helms is Haus's principal agent.  Mrs. Gargano (Mr. Gargano's wife) is a partial owner of Haus, even though she has no industry experience.  Mrs. Gargano also owns Genesis Beverage, Inc. and co-owns Haus's liquor license along with Mr. Helms, Mr. Laird (a former MWW employee), and Genesis.

## C.    Other Entities

Several other entities play a role in this case.  Direct Mail is a direct mail marketing company owned by Mr. Gargano.  Mr. Gargano also owns KIG Properties.  The plaintiffs allege that there is a unity of ownership and interests between Mr. Gargano, MWW, Haus, Direct Mail, and KIG.  Specifically, according to the plaintiffs, KIG guaranteed all assets owned by Mr. Gargano and MWW.  Mr. Gargano used profits and assets from Direct Mail to operate MWW and transferred assets from Direct Mail to MWW.  Finally, "[u]pon information and belief," Mr. Gargano "disclosed the fact that he moved funds between MWW, Direct Mail Resources and KIG Properties to former MWW General Manager Andy Bikilous."  (*Id*. ¶ 138.)  MWW is currently winding down its operations as its current liabilities exceed its assets.

## D.    The Second Amended Complaint

The plaintiffs' second amended complaint is styled as a class action.  The first five counts are brought against all defendants but appear to be directed at MWW and Mr. Gargano.  The plaintiffs allege that MWW and Mr. Gargano: (1) failed to pay overtime compensation under the Fair Labor Standards Act ("FLSA") (Count I) and the Illinois Minimum Wage Law ("IMWL") (Count II); (2) made unlawful deductions from wages in violation of the Illinois Wage Payment and Collection Act ("IWPCA") (Count III); and (4) are liable for the business expenses of the putative class based on a state law unjust enrichment theory (Count V).[5]  In addition, the plaintiffs allege that Haus, Mrs. Gargano, Mr. Helms, and Mr. Laird (the "Haus defendants") are liable for any judgment entered against MWW in connection with Counts I, II,

_____

[5] The plaintiffs also assert an ERISA claim against all defendants (Count IV).  In their response to the motion to dismiss, the plaintiffs state that they "will no longer be pursuing their ERISA claims and concede the motion to dismiss on this [ERISA] claim alone." (Pls.' Resp. at 2, n.1, Dkt. 66-1.)  Thus, Count IV of the second amended complaint is dismissed with prejudice.

III, and V under a successor liability theory (Count VI) and ask the court to pierce the corporate veil against Direct Mail and KIG and find that Mr. Gargano is personally liable for their debts (Count VII). Finally, the plaintiffs allege that the Haus defendants engaged in "fraud in fact in violation of 740 ILCS 160/5(a)(1)(2)(4)(9) and (10)" (Count VIII), "fraud in law in violation of 740 ILCS 160/6(a)" (Count IX); and "fraud in fact and law in violation of "740 ILCS 160/5 and (6)" (Count X).

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Allegations of fraud are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). This means the plaintiff must, at a minimum, provide the time, place, and content of the alleged false representations, the method by which the representations were communicated, and the identities of the parties to those representations. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th

Cir. 2012) ("[T]he plaintiff must allege the who, what, when, where, and how of the alleged fraud.") (internal quotation marks omitted).

### III. ANALYSIS

The court first considers Counts I, II, III, and V, which seek relief from MWW and Mr. Gargano. It will next address the plaintiffs' allegations about successor liability (Count VI) and piercing the corporate veil (Count VII). Finally, the court will discuss the fraud counts (Counts VIII, IX, and X).

**A.      Claims Against MWW and Mr. Gargano**

**1.      Fair Labor Standards Act (Count I)**

MWW and Mr. Gargano argue that the plaintiffs' FLSA claim fails because the FLSA excludes independent contractors from the definition of "employee" and the allegations in the second amended complaint demonstrate that the putative class consists of independent contractors. Alternatively, they argue that the members of the putative class were "employed . . . in the capacity of outside salesman," 29 U.S.C. § 213(a)(1), and thus are exempt from the FLSA's overtime compensation requirement. They also contend that the plaintiffs have failed to sufficiently allege that Mr. Gargano is subject to personal liability under the FLSA.

**a.      Employer-Employee Relationship**

"Status as an 'employee' for purposes of the FLSA depends on the totality of the circumstances rather than on any technical label." *Brown v. Club Assist Road Service U.S., Inc.*, No. 12-CV-5710, 2013 WL 5304100, at *5 (N.D. Ill. Sept. 19, 2013) (citing *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992)). Whether individuals are independent contractors or employees turns on whether they "as a matter of economic reality[,] are dependent upon the

business to which they render service." *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987). Six elements are relevant to this determination:

> (1) The nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1535.

The second amended complaint tracks these elements. The plaintiffs allege that MWW and Mr. Gargano micro-managed multiple aspects of their workday. While the plaintiffs were paid on commission, they also received a salary, and the complaint's allegations support the inference that the opportunity for profit or loss depended on instructions given by supervisors, not individual managerial skill. The fact that MWW required its workers to take training classes and read assigned materials suggests that the work required special skills. Moreover, it appears from the face of the second amended complaint that the workforce was necessary for MWW to exist; without the workers, it is difficult to understand how MWW would function. These factors all support an inference that the workers were employees.

On the other hand, neither MWW nor Mr. Gargano reimbursed the members of the putative class for business expenses. This factor suggests that the workers were independent contractors. But no one factor is determinative. *See Solis v. Intern. Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740, 749 (N.D. Ill. 2011). At the motion to dismiss stage, the court must determine if a complaint plausibly states a claim for relief. *Iqbal*, 556 U.S. at 678. The allegations relating to all six elements satisfy this standard. The motion to dismiss the FLSA

claims based on the defendants' contention that the plaintiffs' allegations show that they are independent contractors is denied.

### b. Outside Sales Exemption

Alternatively, MWW and Mr. Gargano argue that the members of the putative class are not subject to the FLSA because they are outside salespeople. An "outside salesperson" is "an employee (1) whose 'primary duty' consists of 'making sales' or 'obtaining orders or contracts for services' and (2) who is 'customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." *Schmidt v. Eagle Waste & Recycling*, 599 F.3d 626, 631 (7th Cir. 2010) (quoting 29 C.F.R. § 541.500). An employee's "primary duty" is the "principal, main, major, or most important duty that the employee performs." *Id*. (quoting 29 C.F.R. § 541.700). "The burden is on the employer to prove that an employee is exempt under FLSA . . . and such exemptions are to be narrowly construed against the employer seeking the exemption." *Id*.; *see also Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 93 (2008) (as a "general rule," the employer bears the burden of proof when claiming that a FLSA exemption applies).

The defendants contend that the members of the putative class are outside salespeople because they primarily made sales, took orders, and worked in the field as opposed to working at MWW's office. The plaintiffs counter that they are more accurately described as overtime-eligible employees who promoted MWW's products. "[T]he application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *see also Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012) (citing *Corning Glass*). A plaintiff need not plead around potential affirmative defenses. *See, e.g.*, *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427,

2010 WL 1474795, at *2 (N.D. Ill. Apr. 12, 2010). Thus, it is not appropriate to resolve this issue on a motion to dismiss.

This conclusion is not altered by the defendants' citation to *Edwards v. KB Home*, No. G-11-240, 2011 WL 3270250, at *11 (S.D. Tex., July 28, 2011), for the proposition that a motion to dismiss may be granted "on [the] basis that [the] outside sales exemption applied." The defendants fail to note that this decision was vacated several months later by the same judge, who stated:

> When taking all of the plaintiffs' factual allegations as true . . . the Court cannot say that the plaintiffs' factual allegations are insufficient to raise a right to relief above the speculative level or to state a claim that has some facial plausibility, as it has not been irrefutably established, at this juncture, that the plaintiffs neatly fit within the statutory definition of "outside salesmen" within the meaning of the FSLA so as to satisfy the outside sales exemption. [ . . . ] As such, the plaintiffs *should be afforded an opportunity to conduct discovery in furtherance of their claims*.

*Edwards v. KB Home*, No. G-11-240, 2011 WL 3270250, at *1 (S.D. Tex. Nov. 14, 2011). The defendants' citation to a vacated decision is unpersuasive.

It is true that a plaintiff "can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). Contrary to the defendants' position, however, the plaintiffs have not pleaded facts that irrefutably demonstrate that the outside salesperson exemption applies. It is premature to decide this issue at the motion to dismiss stage without the benefit of a fully developed record. Thus, the motion to dismiss the FLSA claims based on the outside salesperson exemption is denied.

### c. Individual Liability

The defendants contend that the plaintiffs' allegations do not support an FLSA claim against Mr. Gargano. Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). As with the question of whether MWW's workers are "employees" under the FLSA, "[c]ourts assess the 'economic reality' of the working relationship to determine whether an individual is an employer under the FLSA." *Perez v. Super Maid, LLC*, No. — F. Supp. 2d —, 11 C 07485, 2014 WL 3512613, at *4 (N.D. Ill. July 14, 2014). Relevant factors include whether the alleged employer: "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Nehmelman v. Penn Nat. Gaming, Inc.*, 790 F. Supp. 2d 787, 795 (N.D. Ill. 2011) (quoting *Alvarez v. Downtown Food Enters., Inc.*, No. 10 C 4509, 2010 WL 5158122, at *2 (N.D. Ill. Dec. 13, 2010)).

The plaintiffs allege that "[Mr.] Gargano, as the sole owner and CEO of MWW, maintained bottom line responsibility for MWW's workforce for all matters relating to their employment, including performance feedback, compensation, promotion and discipline, project supervision, workplace resources and expense reimbursement." (2d Am. Compl. ¶ 39, Dkt. 28.) They also allege that Mr. Gargano "insisted on classifying them as independent contractors, thus depriving them of the benefits of employee status, including payment of an overtime premium for all hours worked over 40 in a workweek . . . ." (*Id*. ¶ 40.) And, the plaintiffs allege that pursuant to Mr. Gargano's directions, they were in fact classified as independent contractors. (*Id*.)

Under federal notice pleading standards, these allegations are sufficient to give Mr. Gargano fair notice of a FLSA claim against him that is plausible. *See Nehmelman*, 790 F. Supp. 2d at 796-99 (denying a motion to dismiss based on the defendant's contention that it was not an "employer" under the FLSA based on the plaintiff's allegations about the control exercised by the defendant, which were "sufficient . . . to satisfy the pleading requirements of *Iqbal* and *Twombly*"). Thus, the motion to dismiss Count I as to Mr. Gargano is denied.

### 2. Illinois Minimum Wage Law (Count II)

In Count II, the plaintiffs allege that MWW and Mr. Gargano violated the IMWL by failing to pay overtime compensation required by 740 ILCS § 105/4a(1). "The Illinois Administrative code specifically states that interpretations of the FLSA should provide guidance to parties interpreting the IMWL, and it sets forth a six-factor test for determining employee status that is virtually identical to the FLSA test." *Brown*, 2013 WL 5304100, at *7; *see also Callahan v. City of Chicago*, — F. Supp. 2d. —, 12 CV 362, 2015 WL 394021, at *24 (N.D. Ill. Jan. 23, 2015) ("Because the IMWL parallels the FLSA so closely, courts have generally interpreted their provisions to be coextensive, and so have generally applied the same analysis to both"). The plaintiffs' IMWL claim tracks their FLSA claim. Thus, the court's FLSA analysis applies equally to the plaintiffs' IMWL claim. Accordingly, the motion to dismiss the IMWL claim is denied.

### 3. Illinois Wage Payment and Collection Act (Count III)

In Count III, the plaintiffs allege that MWW and Mr. Gargano violated the IWPCA, 820 ILCS § 115/9, by making improper deductions from their compensation. The IWPCA "mandates payment of wages only to the extent the parties' contract or employment agreement requires such payment." *Hoffman v. RoadLink Workforce Solutions, LLC*, No. 12-C-7323, 2014

WL 3808938, at *4 (N.D. Ill. Aug. 1, 2014). Thus, to state a claim under the IWPCA, a plaintiff "must plead that wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Brown*, 2013 WL 5304100, at *8 (quoting *Landers-Scelfo v. Corporate Office Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. 2005)); *see also* 820 ILCS § 115/5 (an obligation to pay vacation benefits may arise under the terms of a "contract of employment or employment policy."). An "'employment contract or agreement' under the IWPCA need not be formally negotiated or written." *Hoffman*, 2014 WL 3808938, at *4. Instead, employers and employees "can manifest their assent to conditions of employment by conduct alone." *Brown*, 2013 WL 5304100, at *8 (internal citations omitted).

MWW and Mr. Gargano assert that the plaintiffs have failed to allege the existence of a written contract or agreement that could support their IWPCA claim. The forty-page second amended complaint is not a model of clarity. The IWPCA count does not refer to a contract or agreement, but elsewhere, the plaintiffs allege that MWW and Mr. Gargano had a "compensation agreement – hybrid salary and commission heavily weighted toward salary, recently changed to less salary with a purported opportunity for greater commissions" that applied to "all Sales Associates across [MWW]." (2d Am. Compl. ¶ 56, Dkt. 28.) This is sufficient to state a claim under the IWPCA. *See Brown*, 2013 WL 5304100, at *8 (holding that an alleged agreement to pay workers in exchange for services stated a claim under the IWPCA and that it would be "premature" to dismiss an IWPCA claim when the plaintiffs plausibly alleged that the defendant was their "employer" under the FLSA and the IMWL).

The defendants' citation to cases such as *Brown v. Lululemon Athletica, Inc.*, No. 10 C 05672, 2011 WL 741254, *3 (N.D. Ill. Feb. 24, 2011), for the proposition that a plaintiff must allege the existence of a contract or agreement addressing the specific salary deductions at issue

-14-

does not alter this conclusion. A plaintiff must allege a right to compensation based on a contract or agreement. *Id.* She is not required to allege an entitlement to be paid for specific expenses. *See Barlett v. City of Chicago*, No. 14 C 7225, 2015 WL 135286, at *3 (N.D. Ill. Jan. 9, 2015) (denying a motion to dismiss based on the City's contention that the plaintiff had failed to allege the existence of "an agreement or contract that explicitly outlined that the City would pay him for his time spent traveling to and from home and work, whether as wages or overtime" as "incorrect" because "[s]uch specificity is not required to allege a claim under the IWPCA."). Thus, the motion to dismiss Count III is denied.

### 4.      Unjust Enrichment (Count V)

The plaintiffs seek relief based on a state law unjust enrichment theory based on their allegations that MWW and Mr. Gargano failed to reimburse the members of the putative class for business expenses and made improper deductions that prevented them from receiving their full compensation. The defendants argue that the FLSA preempts this claim.

The FLSA requires employers to pay overtime wages and governs the amount of compensation that must be paid. *See* 29 U.S.C. § 207(a)(1). To the extent that a plaintiff asserts that an employer wrongfully withheld compensation in violation of state common law based on the same factual allegations supporting an FLSA claim, her state law claim is preempted. *See Kyriakoulis v. DuPage Health Center, Ltd.*, No. 10-C-7902, 2011 WL 2420201, at *1 (N.D. Ill. June 9, 2011) (collecting cases); *Farmer v. DirectSat USA, LLC*, at No. 08-C-3962, 2010 WL 3927640, at *16 (N.D. Ill. Oct. 4, 2010) (collecting cases).

The plaintiffs nevertheless offer *Nicholson v. UTi Worldwide*, No. 09-CV-722, 2010 WL 551551, at *6 (S.D. Ill. Feb. 12, 2010), for the proposition that the FLSA does not preempt state common law claims "seek[ing] something other than what the FLSA can provide." *Id.* The

*Nicholson* court, however, held that " if all that is sought in a state law quantum meruit or unjust enrichment claim is unpaid overtime compensation or minimum wages that are guaranteed by the FLSA, those state law claims are preempted." *Id.* That is precisely what the plaintiffs in the instant case seek, as they contend that they did not receive their full earned wages since MWW improperly docked their pay. (2d Am. Compl. ¶¶ 174, 176-77, 179, Dkt. 28.) Thus, the plaintiffs' unjust enrichment claim is preempted. The motion to dismiss Count V is, therefore, granted.

**B.      Claims Against Haus, Mrs. Gargano, Mr. Helms, and Mr. Laird**

**1.      Successor Liability as to the Haus Defendants (Count VI)**

Count VI alleges that the Haus Defendants (Haus, Mrs. Gargano, Mr. Helms, and Mr. Laird) "are liable for Plaintiffs' underlying claims alleged against Defendants MWW and [Mr.] Gargano" under a successor liability theory.[6] (*Id.* ¶ 191.) Although the plaintiffs styled successor liability as a claim, it is, in fact, a theory of liability. *See AngioScore, Inc. v. TriReme Medical, LLC*, No. 12-CV-3393 YGR, 2014 WL 4438082, at *5 n.4 (N.D. Cal. Sept. 9, 2014). The Seventh Circuit has "stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Nevertheless, a defendant may file a Rule 12(b)(6) motion directed at allegations supporting a theory of liability. *See AngioScore*, 2014 WL 4438082, at *5 n.4; *see also Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995) (addressing appeal from the grant of a

_____

[6] The court is forced to consider Count VI without the benefit of the views of Haus or Mr. Helms, as these defendants stipulated – without the approval of the court – to answer after the court ruled on the pending motion to dismiss. Some discussion of the allegations against these defendants is unavoidable. This is a situation of Haus and Mr. Helms's own making, so they are bound by the court's ruling.

Rule 12(b)(6) motion to dismiss a successor liability claim); *Mamacita, Inc. v. Colborne Acquisition Co., LLC.*, No. 10 C 6861, 2011 WL 881654, at *3 (N.D. Ill. Mar. 11, 2011) (ruling on a Rule 12(b)(6) motion to dismiss a successor liability claim).

"When a claim arising from a violation of federal rights is asserted, a plaintiff may sue" based on a successor liability theory "provided that two conditions are satisfied: (1) the successor had notice of the plaintiff's claim prior to the acquisition; and (2) there was 'substantial continuity in the operation of the business before and after the sale.'" *Ordonez v. Akorat Metal Fabricators, Inc.*, No. 10 C 5708, 2011 WL 6379290, at *1 (N.D. Ill. Dec. 20, 2011) (quoting *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 747-48 (7th Cir. 1994)). Contrary to the defendants' contention, the second amended complaint contains ample allegations supporting the plaintiffs' theory of successor liability against Haus since the gist of the plaintiffs' claim against Haus is that it was formed to allow MWW to continue its business while evading its FLSA obligations.

The defendants, however, correctly point out that individuals cannot be personally liable under a successor liability theory unless the court pierces the corporate veil. *See Auto. Fin. Corp. v. Joliet Motors, Inc.*, 761 F. Supp. 2d 789, 792 (N.D. Ill. 2011). Like successor liability, piercing the corporate veil is not a claim, but a theory of liability. Under Illinois law, to pierce the corporate veil: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) adhering to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences." *Id*. (quoting *Int'l Fin. Servs. Corp. v. Chromas Tech. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004)).

The plaintiffs allege fraud as the basis for piercing the corporate veil. "Unfortunately, the Seventh Circuit hasn't opined on the appropriate pleading standard for veil piercing when fraud allegations are in play. And other courts are all over the board on the issue. Some courts have applied the Rule 9(b) particularity requirements to fraud-based veil piercing arguments . . . . Other courts have applied only the lower, notice requirements of Fed. R. Civ. P. 8(a)." *Chapel Ridge Inv., L.L.C. v. Petland Leaseholding Co., Inc.*, No. 1:13-CV-00146-PPS, 2013 WL 6331095, at *6 (N.D. Ind. Dec. 4, 2013) (collecting cases).

The parties disagree about the legal import of the allegations about piercing the corporate veil as to the individual defendants. However, regardless of whether the court applies Rule 8(a) or Rule 9(b)'s pleading standards, the result is the same. The gist of the allegations as to these defendants is that they created shell companies to further their own personal interests and effect a fraud on MWW's workers. "[Mr.] Laird, the former Midwest Wine & Spirits Controller, on his LinkedIn page describes his current work experience as "Secret at Secret Project," beginning from September 2013" (the date when MWW announced it would be closing). (2d Am. Compl. ¶ 122, Dkt. 28.) He allegedly is a partial owner of Haus' liquor license, was aware of the plaintiffs' claims before he acquired MWW's assets and operations, and is operating Haus out of MWW-owned property using MWW's delivery systems without paying rent to MWW.

Mr. Helms allegedly was involved in the creation of Haus to allow MWW to avoid its obligations, and is in charge of Haus' business operations. Haus' website directs individuals seeking a job to submit applications directly to Mr. Helms. Mrs. Gargano allegedly has no experience in the wine and spirits industry, but owns Haus, as well as Genesis Beverage, Inc., and together, Mrs. Gargano, Mr. Laird, and Genesis own Haus' liquor license. According to the plaintiffs, Mr. and Mrs. Gargano financed their $1.9M home using KIG to improperly divert

MWW's asserts for their personal use, and the Garganos knew about the plaintiffs' claims before getting involved in the formation of Haus to shield Mr. Gargano from MWW's liability.

Discovery may belie these allegations. However, they are sufficiently particular, satisfactorily track the elements necessary to pierce the corporate veil, and adequately place the defendants on notice of the "plaintiff[s'] intent to rely on a piercing the corporate veil theory." *See PNC Bank, Nat. Ass'n v. Hall*, No. 1:07-CV-00992-LJM, 2010 WL 3947506, at *4 (S.D. Ind. Oct. 7, 2010). This is all that is required at this stage of the proceedings. *See Chapel Ridge*, 2013 WL 6331095, at *6-7. The motion to dismiss Count VI is denied.

### 2. Piercing the Corporate Veil as to Direct Mail and KIG (Count VII)

Count VII is entitled "piercing the corporate veil against defendants Direct Mail Resources, Inc. and KIG Properties LLC." The allegations in this count are difficult to follow. The count is directed at Direct Mail and KIG but appears to be premised on the idea that Mr. and Mrs. Gargano used Direct Mail and KIG for their own purposes and that these entities are alter egos of MWW. The count ends with this cryptic assertion:

> Defendants Gargano and MWW are liable for causes of action one through five above. Due to the fraudulent transactions and illegal commingling of assets by David Gargano, among his various corporate and/or limited liability entities, including MWW, Direct Mail Resources and KIG Properties, David Gargano and MWW are near or at insolvency and thus will be unable to pay any judgments owed to Plaintiffs.

(2d Am. Compl. ¶ 204, Dkt. 28.) In the plaintiffs' memorandum opposing the motion to dismiss, however, they discuss cases about piercing the corporate veil to "hold the individual investors personally liable" and discuss alleged wrongdoing by Mr. Gargano. (Pls. Resp. at 31-33, Dkt. 66-1.)

It is possible to pierce the corporate veil and find that an entity, as well as an individual, is liable for the actions of another entity. *See Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, (7th Cir. 2009). The court assumes that the plaintiffs intended to allege facts showing that the corporate veils of Direct Mail and KIG should be pierced because these entities are alter egos of MWW. The plaintiffs, however, have not articulated an understandable basis for this theory of liability. At best, they have directed the attention of the court and the defendants to a confusing and conclusory hodgepodge of allegations relating to all of the defendants. The court declines to hunt through the 255-paragraph complaint in an effort to locate factual allegations that might clarify Count VII (if that is possible). This count is dismissed with leave to replead. The plaintiffs should either provide sufficient detail to meet Rule 9(b)'s particularity requirements or point to authority sufficient to convince the court that Rule 8(a)'s notice pleading requirement applies to their veil-piercing claim.

### 3. The Plaintiffs' Fraud Claims[7]

Counts VIII and X, which are labeled as different types of "fraud in fact" claims against Haus, Mrs. Gargano, Mr. Helms, and Mr. Laird, and IX, which is labeled as a "fraud in law" claim against Haus, Mrs. Gargano, Mr. Helms, and Mr. Laird, are subject to Fed. R. Civ. P. 9(b)'s heightened pleading standard as they sound in fraud. Despite the titles of these counts,

---

[7] As with Count VI (successor liability), the fraud counts include allegations directed at Haus and Mr. Helms, who elected to stipulate that they would to answer after the court ruled on the pending motion to dismiss. Unlike Count VI, resolution of the motion to dismiss the fraud counts does not necessitate discussion of any allegations specifically directed at these defendants. Haus and Mr. Helms are nevertheless bound by the court's ruling which, in this instance, favors them.

which evoke common law fraud, they all appear to be based on the Illinois Uniform Fraudulent Transfer Act ("IUFTA").[8]

In Count XIII, the plaintiffs cite to 740 ILCS § 160/5(a)(1)(2)(4)(9) and (10). This is confusing because, as the defendants correctly observe, § 160/5(a) contains only two subsections. In Count IX, the plaintiffs cite to 740 ILCS § 160/6(a), which addresses claims arising before a transfer of assets. In Count X, the plaintiffs cite to "740 ILCS [§] 160/5 and (6)." What is this? Subsection 160/6(6) does not exist and, in any event, it is unclear why the plaintiffs would include a separate count requesting relief under § 160/5 and § 160/6 when they previously asserted two counts against the same defendants based on these same two sections of the IUFTA. The court nevertheless forges on and considers the defendants' contention that the fraud claims are impermissibly based on allegations made "upon information and belief" and fail to meet Rule 9(b)'s heightened pleading standard.

The "familiar formula" of pleading facts upon information and belief "won't do in a fraud case – for it can mean as little as "on rumor" – unless '(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*, 772 F.3d 1102, 1108 (7th Cir. 2014) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011)). Here, the plaintiffs incorporate the allegations in all the proceeding paragraphs into each fraud count.[9] This is known as "shotgun" pleading. *See CustomGuide v.*

---

[8] The court will follow the parties' convention of referring to Counts XII, IX, and X as "fraud" counts. It is unclear, however, if they are based in whole or in part on common law fraud or if they, instead, allege violations of the IUFTA. If the plaintiffs file a third amended complaint, they should clarify this issue.

[9] The plaintiffs incorporate prior allegations in all of their counts, not just the fraud counts. While this is improper, it is particularly inappropriate in the context of a fraud claim, which must

-21-

*CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011). "Such pleadings make it 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

In addition, many of the allegations preceding the fraud counts appear in two iterations: one made "upon information and belief" and one without this qualifier. *See*, *e.g.*, 2d Am. Compl. ¶ 120 ("Upon information and belief, Haus currently employs a number of former MWW employees, particularly the administrative or "back office" staff who were paid as W-2 employees, including, Michael Helms, Nichole Fuchsen, and Mary Ross"); ¶ 189 ("A significant number of MWW former employees are currently employed by Haus."). Allegations are either made upon information and belief or not. Both cannot be true.

Moreover, the allegations in the fraud counts are largely conclusory. *See*, *e.g.*, 2d Am. Compl. ¶ 206 ("Defendants David Gargano and MWW transferred their assets to Haus with the actual intent to hinder, delay and defraud Plaintiffs"); ¶ 207 ("Defendants Haus, Zaira Karina Gargano, Matt Helms and Michael Laird retained possession and control of the assets transferred by David Gargano and MWW to Haus"); ¶ 208 ("Haus, Zaira Karina Gargano, Matt Helms and Michael Laird continue to receive fraudulent transfers, such that Haus presently operates out of MWW owned property and uses MWW's delivery systems, but does not pay any rent to MWW").

The plaintiffs' inaccurate citations to IUFTA, shotgun pleading, and generalized assertions of fraud do not place the court and the defendants on notice of the alleged factual basis

---

be pled with particularity. *See* Fed. R. Civ. P. 9(b).

for the purported violations of IUFTA or satisfy Rule 9(b)'s particularity requirement. Moreover, while some of the facts alleged in the second amended complaint are inherently inaccessible to the plaintiffs, such as Mrs. Gargano's alleged lack of experience with the wine and spirits industry, the plaintiffs do not articulate "grounds for [their] suspicions." *Pirelli*, 631 F.3d at 443. Instead, they present allegations (in versions that include or omit the "upon information and belief" qualifier) as a fait accompli. *See, e.g.*, 2d Am. Compl. ¶ 113 ("Upon information and belief, Defendant Zaira Karina Gargano has limited business knowledge, limited knowledge of the wine and spirits industry, and is not involved in the operations of Haus"); ¶ 185 ("Defendant David Gargano is the Owner, President and CEO of MWW. His wife, Zaira Karina Gargano, who has limited industry experience, purchased Haus Wine and Spirits, and is a partial owner of the Liquor License issued to Haus"). In sum, Counts VIII, IX, and X are deficient. They are dismissed with leave to replead.

## IV. CONCLUSION

For the reasons discussed above, the motion to dismiss the second amended complaint filed by MWW, Mr. and Mrs. Gargano, Direct Mail, and KIG [46] is granted in part and denied in part. Specifically, Counts I (FLSA), II (IMWL), and III (IWPCA) as to MWW and Mr. Gargano survive the motion to dismiss. Count IV (ERISA) is dismissed with prejudice as the plaintiffs elected to withdraw their ERISA claim. Count V (unjust enrichment as to MWW and Mr. Gargano) is dismissed with prejudice because it is preempted by the FLSA. Counts VII (piercing the corporate veil as to Direct Mail and KIG) and Counts XIII, IX, and X (fraud/IUFTA as to Haus, Mrs. Gargano, Mr. Helms, and Mr. Laird) are dismissed without prejudice and with leave to replead. The "professional capacity" claims against the individual defendants are dismissed.

The plaintiffs may file a third amended complaint, consistent with this opinion and counsels' Rule 11 obligations, by April 17, 2015. *All* of the defendants must answer or otherwise plead by May 8, 2015. Finally, the parties recently advised the court that they are discussing settlement. If they believe that a conference with this court or a referral to the magistrate judge would facilitate these efforts, they should advise the clerk.


Date:   March 26, 2015

_____/s_____
Joan B. Gottschall
United States District Judge